# United States District Court

| SOUTHERN | DISTRICT OF | TEXAS |

## McALLEN DIVISION

UNITED STATES OF AMERICA

V.

**CRIMINAL COMPLAINT**

Dewayne Karl Nobles II            *Principal*

YOB:    2000      United States

Case Number:

M-19- 1832 -M

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **August 1, 2019** in **Hidalgo** County, in the **Southern** District of **Texas** defendants(s) did,
*(Track Statutory Language of Offense)*

knowing or in reckless disregard of the fact that Dodanim Apolinar Alarcon-Dominguez and Carlos Alberto Candelero-Correa, both citizens and nationals of Mexico, along with nine (9) other undocumented aliens, for a total of eleven (11), who had entered the United States in violation of law, concealed, harbored or shielded from detection or attempted to conceal, harbor, or shield from detection such aliens in any place, including any building or means of transportation, to wit: a residence located in Progreso, Texas

in violation of Title **8** United States Code, Section(s) **1324(a)(1)(A)(iii)   FELONY**

I further state that I am a(n) **U.S. Border Patrol Agent** and that this complaint is based on the following facts:

On August 1, 2019, Weslaco Border Patrol Agents were informed of a drawbridge camera activation in the Progreso, Texas area. When the Agents arrived to the area of the activation they noticed foot sign of multiple subjects crossing the wall gap in Progreso, Texas and followed the foot sign to the Progreso Lakes residential area.

**SEE ATTACHMENT**

I declare under penalty of perjury that the statements in this complaint are true and correct. Executed on August 03, 2019.

Continued on the attached sheet and made a part of this complaint:    [X] Yes   [ ] No

*Submitted by reliable electronic means, sworn to and attested to telephonically per Fed. R. Cr. P. 4.1, and probable cause found on:*

/S/ Jorge Coria
Signature of Complainant

Jorge Coria            Border Patrol Agent
Printed Name of Complainant

August 3, 2019   @ 4:39 p.m.                at    McAllen, Texas
Date                                              City and State

Juan F. Alanis         , U. S. Magistrate Judge
Name and Title of Judicial Officer                Signature of Judicial Officer

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### McALLEN, TEXAS

ATTACHMENT TO CRIMINAL COMPLAINT:

M-19- 1832 -M

RE:     Dewayne Karl Nobles II

**CONTINUATION:**

While the agents were searching for the group of subjects, a concerned citizen approached the Agents and informed them that he had seen multiple subjects go into the garage located at 720 North Moon Lake in Progreso, TX. The concerned citizen stated that as soon all the subjects went into the garage the garage door closed behind them.

The agent attempted to make contact at the residence by knocking at the front door, but no contact was established. A short time later, Agents made contact with the property owner via telephone and informed him of the situation. The home owner informed the agents the only person that should be home should be his son, who he identified as Dewayne Nobles. The homeowner stated he had remote access to his garage and could see that the garage door had been opened. The home owner allowed the agents into his garage to search for any intruders. He remotely opened the garage door and agents checked the garage area. Agents discovered a black trash bag with wet clothing and a pair of wet muddy shoes.

The homeowner was informed of the situation and he consented for the agents to search the whole house, but wanted for the agents to wait for him to arrive at the home.

Prior to the home owner arriving, Dewayne Karl Nobles II, the home owners step son, exited the residence and made contact with the agents. Nobles allowed the agents to search certain sections of the home, however no one was found.

When the homeowner arrived to the residence he granted consent to search the entire home. The agents searched the bedroom belonging to Dewayne Karl Nobles II. Nobles's bedroom had a crawl space leading to the attic. The agents looked up into the attic and discovered eleven subjects sitting on the beams.

All subjects were questioned about their citizenship and all stated they were in the United States illegally. While the agents were escorting the subjects out of the attic, they overheard Nobles tell his step-father that he will take responsibility for what he did. Nobles told his step-father that nothing he did would affect him in any way.

Nobles along with the eleven (11) undocumented aliens were transported to the McAllen Centralized Processing Center for processing.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### McALLEN, TEXAS

ATTACHMENT TO CRIMINAL COMPLAINT:

M-19-1832-M

RE:     Dewayne Karl Nobles II

**CONTINUATION:**

**Principal Statement**
Dewayne Karl Nobles II was read his Miranda Rights. He understood his rights and provided a sworn statement.

Noble stated he was offered $1200 to house several subjects at his residence until they were picked up. Noble admitted he was about to leave when he received a call telling him that the subjects were in front of his house. Nobles claimed he was outside and noticed multiple subjects running towards him. Nobles then guided them into the garage and closed the garage door when all of the subjects were inside. Nobles stated he went inside the house and waited for a call from someone that would pick up the people. According to Nobles, he got scared after seeing the officers in the area, so he led the subjects upstairs and signaled them to get into the attic of the house where they stayed for about an hour.

**Material Witness Statement**
Carlos Alberto Candelero-Correa and Dodanim Apolinar Alarcon-Dominguez were read their Miranda Rights. Both understood their rights and each provided a sworn statement.

Candelero, a citizen of Mexico, stated he made smuggling arrangements in Nuevo Progreso, Mexico. If Candelero was smuggled successfully into the United States, he would have to pay $4,000. Candelero claimed he along with 10 other subjects crossed into the United States using an inflatable raft. From the United States river bank, Candelero along with the others were guided through the brush for about 30 minutes until reaching the border wall. Once they reached the wall, the guide told them to run and pointed which direction to go. Candelero then ran until he saw a dark skinned man, African-American, who signaled him and the others to get into a garage. Once they all got inside the garage, the man closed the garage door. According to Candelero, they heard noises outside the residence, so the man, signaled them to move into a small room inside the house for about 30 minutes. The man then signaled them to get out of the room and signaled them to enter the house attic where they stayed for about two hours.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
## McALLEN, TEXAS

ATTACHMENT TO CRIMINAL COMPLAINT:

M-19- 1832 -M

RE:     Dewayne Karl Nobles II

**CONTINUATION:**

Alarcon, citizen of Mexico, stated he made the smuggling arrangements and paid $1,400. Alarcon along with 10 other subjects crossed into the United States using an inflatable raft. Once they crossed the river, they were told that once they reached the wall they need to walk through the edge of the pond past an open field. Past the open field, a black man would be waiting for them. They all followed the directions until they saw the black male, who waved them to enter a garage. As soon as they entered the garage the black man provided them with water to drink and closed the garage door. Moments later, from the garage the black man told them to go inside the house and not make noise. Afterwards, Alcaron claimed the black man moved them into the attic where they stayed for over an hour.

Alarcon identified Nobles, through a photo lineup, as the black man that waved him into the garage and instructed him while inside the house.